# EXHIBIT 1

1  SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
   JOHN T. JASNOCH (CA. BAR NO. 281605)
2  707 Broadway, Suite 1000
   San Diego, CA 92101
3  Telephone: (619) 233-4565
   Facsimile: (619) 233-0508
4  jjasnoch@scott-scott.com

5
   *Counsel for Plaintiffs*
6
   [Additional Counsel on signature page.]
7

**FILED**

**SAN MATEO COUNTY**

AUG 1 1 2016

Clerk of the Superior Court

By _____

DEPUTY CLERK

File By Fax

8

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        COUNTY OF SAN MATEO

12                                              **16CIV00884**

13  CHARLES BLOOM AND SHARON        Case No.
    BURNSTEIN, Individually and on Behalf of All
    Others Similarly Situated,      **CLASS ACTION COMPLAINT FOR**
14                                  **VIOLATIONS OF THE SECURITIES ACT**
                                    **OF 1933**
15                      Plaintiffs,

16      vs.                          JURY TRIAL DEMANDED

17  GOLDMAN, SACHS & CO., MERRILL
    LYNCH, PIERCE, FENNER & SMITH INC.,
18  DEUTSCHE BANK SECURITIES INC.,
    MORGAN STANLEY & CO. LLC, J.P.
19  MORGAN SECURITIES LLC, MACQUARIE     16 – CIV – 00884
    CAPITAL (USA) INC., and MCS CAPITAL   CMP
20  MARKETS LLC,                          Complaint Filed
                                          146753
21                      Defendants.

22

23

24

25

26

27

28

─────────────────────────────────────────────
                  CLASS ACTION COMPLAINT

1        Plaintiffs Charles Bloom and Sharon Burnstein ("Plaintiffs"), individually, and on behalf of all

2  others similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' Complaint against

3  Defendants, alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own

4  acts, and upon information and belief as to all other matters, based on the investigation conducted by

5  and through Plaintiffs' attorneys, which included, among other things, a review of SunEdison, Inc.

6  ("SunEdison" or the "Company") press releases, Securities and Exchange Commission ("SEC") filings,

7  analyst and media reports, and other commentary, analysis, and information concerning SunEdison and

8  the industry within which it operates.   Plaintiffs' investigation into the matters alleged herein is

9  continuing and many relevant facts are known only to, or are exclusively within the custody and control

10  of, the Defendants.   Plaintiffs believe that substantial additional evidentiary support will exist for the

11  allegations set forth herein after a reasonable opportunity for formal discovery.

12                         **NATURE AND SUMMARY OF THE ACTION**

13      1.     Plaintiffs bring this action under §§11 and 12(a)(2) of the Securities Act of 1933 (the

14  "Securities Act") against the underwriters and financial advisors for SunEdison's August 19, 2015

15  Series A Perpetual Convertible Preferred Stock Offering (the "Offering").   The registration statement for

16  the Offering (the "Registration Statement") contained materially incorrect or misleading statements

17  and/or omitted material information that was required to be disclosed.   Defendants are each strictly

18  liable for such misstatements and omissions and are so liable in their capacities as underwriters of the

19  Offering.   For all of the claims stated herein, Plaintiffs expressly disclaim any allegation that could be

20  construed as alleging fraud or intentional or reckless misconduct.

21      2.     SunEdison is a diversified developer of wind and solar energy projects, having developed

22  over 1,300 solar and wind projects in 20 countries.   SunEdison misled investors by creating the picture

23  that the Company had the financial wherewithal to sustain continued growth.   However, as the Company

24  continued its acquisition binge, it was revealed that the entire scheme was nothing more than a house of

25  cards.

26      3.     The Company issued 650,000 shares of SunEdison 6.75% Series A Perpetual Convertible

27  Preferred Stock (the "Preferred Stock") at $1,000 a share in the Offering on or around August 19, 2015.

28

4. In connection with the Offering, SunEdison made several affirmative misstatements about the Company's financial and liquidity position. In particular, SunEdison issued financial statements and press releases publicizing its acquisition strategy, that the Company was increasing net sales and poised for growth.

5. The Registration Statement (and Prospectus incorporated therein) contained materially incorrect or misleading statements and/or omitted material information that was required to be disclosed. Defendants are each strictly liable for such misstatements and omissions therefrom (subject only to their ability to establish a "due diligence" affirmative defense), and are so liable in their capacities as underwriters of the over 650,000 SunEdison Preferred Stock shares sold pursuant to the Offering. For all of the claims stated herein, Plaintiffs expressly disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

6. Furthermore, because this case involves a Registration Statement, Defendants also had an independent, affirmative duty to provide adequate disclosures about adverse conditions, risks, and uncertainties. *See* Item 303 of SEC Reg. S-K, 17 C.F.R. §229.303(a)(3)(ii). Thus, Defendants had an affirmative duty to ensure that the Registration Statement and the materials incorporated therein disclosed material trends and uncertainties that they knew or should have reasonably expected would have a materially adverse impact on SunEdison's business. Defendants failed to fulfill this obligation.

7. Unbeknownst to investors, however, the Registration Statement's representations were materially inaccurate, misleading, and/or incomplete because they failed to disclose, *inter alia*, that the Company was suffering from a massive liquidity crisis, was borrowing money at an unsustainably high level, was extremely overleveraged, and was suffering from a material breakdown in the Company's internal financial controls. Accordingly, the price of the Preferred Stock was artificially and materially inflated at the time of the Offering.

8. Unfortunately for investors who purchased the Company's shares pursuant or traceable to the Offering, however, the truth concerning the nature and extent of the problems facing the Company did not begin to emerge until after the Offering.

CLASS ACTION COMPLAINT

9.     The truth first started to emerge in early October 2015, when, among other things, *SeekingAlpha* issued a report entitled *SunEdison: Is Bankruptcy Possible*? noting that SunEdison's cash expenditures are "clearly unsustainable" with the Company burning "around $3.5 billion in the last four quarters." The article also noted that "SunEdison is over-leveraged" with "shareholders equity of only $632 million and total liabilities of $16,925 million, it is possible to calculate a debt to equity ratio of 26.78."

10.     Investors learned more bad news in February and March 2016, when SunEdison delayed its 10-K filing with the SEC due to allegations made by former executives on the accuracy of the company's financial position. An audit committee on SunEdison's board, in consultation with outside advisors and counsel opened an investigation, which it warned could cause a reassessment of the company's liquidity and its overall financial standing.

11.     On March 2, 2016, SunEdison further shocked investors when it announced that it was suspending payment of the quarterly dividends on the Preferred Stock.

12.     In response to those disclosures, the Company's shares fell sharply; falling from the $1000 issuing price to a closing price on April 1, 2016 of $20, a staggering drop of 98%.

13.     By this action, Plaintiffs, on behalf of themselves and the other Class members who also acquired the Company's shares pursuant or traceable to the Offering, now seek to obtain a recovery for the damages they have suffered as a result of Defendants' violations of the Securities Act, as alleged herein.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because this case is a cause not given by statute to other trial courts. This action is not removable. The claims alleged herein arise under §§11 and 12(a)(2) of the Securities Act. *See* 15 U.S.C. §§77k, 77l(a)(2). Jurisdiction is conferred by §22 of the Securities Act and venue is proper pursuant to §22 of the Securities Act. *See* 15 U.S.C. §77v. Section 22(a) of the Securities Act explicitly states that "[e]xcept as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be

removed to any court of the United States." *Id.*  Section 16(c) refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims under state or common law. *See* 15 U.S.C. §77p(c) and (f)(2). This action is asserting federal law claims and, thus, does not fall within the definition of "covered class action" under Securities Act §16(b)-(c) and, therefore, is not removable to federal court. *See Luther v. Countrywide Fin. Corp.*, 195 Cal. App. 4th 789, 792 (2011) ("The Federal Securities Act of 1933 . . . as amended by the Securities Litigation Uniform Standards Act . . . provides for concurrent jurisdiction for cases asserting claims under the 1933 Act . . . ."); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1032 (9th Cir. 2008) ("Section 22(a) of the Securities Act of 1933 creates concurrent jurisdiction in state and federal courts over claims arising under the Act.  It also specifically provides that such claims brought in state court are not subject to removal to federal court.").

15.    This Court has personal jurisdiction over each of the Defendants named herein because they conduct business, were citizens of, and/or took steps to prepare the Offering, in California. Additionally, many of the Defendants are located within this County and the statements complained of herein were disseminated into this State.

16.    Venue is proper in this Court because Defendants' wrongful acts arose in and emanated from, in part, this County.  The violations of law complained of herein occurred in this County, including the dissemination of materially misleading statements into this County, the purchase of the Company's common stock by members of the Class who reside in this County, and the sale of the Company's common stock by certain of the Defendants (as defined below) in this County.  In addition, certain of the Defendants maintain offices of operations in this County.

**PARTIES**

A.    **Plaintiffs**

17.    Plaintiff Charles Bloom purchased a total of 50 shares, at $836.13 per share, of the Company's Preferred Stock on or about September 14, 2015, for a total cost of $41,806.50, that were issued pursuant and traceable to the Registration Statement and the Offering, and was damaged thereby.

18.     Plaintiff Sharon Burnstein purchased a total of 50 shares, at $836.13 per share, of the Company's Preferred Stock on or about September 14, 2015, for a total cost of $41,806.50, that were issued pursuant and traceable to the Registration Statement and the Offering, and was damaged thereby.

**B.     Defendants**

19.     Defendant Goldman, Sachs & Co. ("Goldman Sachs") was an underwriter of the Company's Offering, served as a financial advisor, and assisted in the preparation and dissemination of SunEdison's false and misleading Registration Statement. Defendant Goldman Sachs conducts business in this County.

20.     Defendant Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch") was an underwriter of the Company's Offering, served as a financial advisor, and assisted in the preparation and dissemination of SunEdison's false and misleading Registration Statement. Defendant Merrill Lynch conducts business in this County.

21.     Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") was an underwriter of the Company's Offering, served as a financial advisor, and assisted in the preparation and dissemination of SunEdison's false and misleading Registration Statement. Defendant Deutsche Bank conducts business in this County.

22.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter of the Company's Offering, served as a financial advisor, and assisted in the preparation and dissemination of SunEdison's false and misleading Registration Statement. Defendant Morgan Stanley conducts business in this County.

23.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") was an underwriter of the Company's Offering, served as a financial advisor, and assisted in the preparation and dissemination of SunEdison's false and misleading Registration Statement. Defendant J.P. Morgan conducts business in this County.

24.     Defendant Macquarie Capital (USA) LLC ("Macquarie") was an underwriter of the Company's Offering, served as a financial advisor, and assisted in the preparation and dissemination of

1  SunEdison's false and misleading Registration Statement.  Defendant Macquarie conducts business in
2  this County.

3      25.     Defendant MCS Capital Markets LLC ("MCS Capital Markets") was an underwriter of
4  the Company's Offering, served as a financial advisor, and assisted in the preparation and dissemination
5  of SunEdison's false and misleading Registration Statement. Defendant MCS Capital Markets conducts
6  business in this County.

7                              **UNDERWRITER LIABILITY**

8      26.     Pursuant to the Securities Act, Defendants are liable for the false and misleading
9  statements in the Offering's Registration Statement and Prospectus.  Defendants' failure to conduct
10 adequate due diligence investigations was a substantial factor leading to the harm complained of herein.

11     27.     Defendants are investment banking houses which specialize, *inter alia*, in underwriting
12 public offerings of securities.  They served as the underwriters of the Offering and received, collectively,
13 approximately $23.4 million in fees.  Defendants determined that in return for their share of the
14 Offering, they were willing to merchandize SunEdison stock in the Offering.  Defendants arranged a
15 multi-city road show prior to the Offering during which they, and certain representatives of SunEdison,
16 met with potential investors and presented highly favorable information about the Company, its
17 operations, and its financial prospects.

18     28.     Defendants also demanded and obtained an agreement from SunEdison that SunEdison
19 would indemnify and hold harmless Defendants from any liability under the federal securities laws.
20 They also made certain that SunEdison purchased millions of dollars in directors and officers liability
21 insurance.

22     29.     Representatives of Defendants also assisted SunEdison in planning the Offering, and
23 purportedly conducted an adequate and reasonable investigation into the business and operations of
24 SunEdison, an undertaking known as a "due diligence" investigation.  The due diligence investigation
25 was required of Defendants in order to engage in the Offering.  During the course of their "due
26 diligence," Defendants had continual access to confidential corporate information concerning
27
28

1  SunEdison's business sales model, financial condition, internal controls, and its future business plans
2  and prospects.

3       30.    In addition to availing themselves of access to internal corporate documents, agents of
4  Defendants, including their counsel, met with SunEdison's lawyers, management, and top executives to
5  determine: (i) the strategy to best accomplish the Offering; (ii) the terms of the Offering, including the
6  price at which SunEdison's stock would be sold; (iii) the language to be used in the Registration
7  Statement; (iv) what disclosures about SunEdison would be made in the Registration Statement; and (v)
8  what responses would be made to the SEC in connection with its review of the Registration Statement.
9  As a result of those constant contacts and communications between Defendants' representatives and
10  SunEdison's management and top executives, Defendants knew, or should have known, of SunEdison's
11  existing problems and misstatements and omissions contained in the Registration Statement as detailed
12  herein.

13       31.    Defendants caused the Registration Statement to be filed with the SEC and declared
14  effective in connection with offers and sales thereof, including to Plaintiffs and the Class.

15  <u>**SUBSTANTIVE ALLEGATIONS**</u>

16  **I.    THE OFFERING AND THE COMPANY'S MATERIALLY MISLEADING AND
       INCOMPLETE REGISTRATION STATEMENT AND PROSPECTUS**
17
18       32.    On or around August 19, 2015, SunEdison conducted the Offering selling 650,000 shares
19  of 6.75% Series A Perpetual Convertible Preferred Stock, par value $0.01 per share (the "Perpetual
20  Convertible Preferred Stock"), at a price of $1,000 per share. The offering was expected to close on
   August 21, 2015. Goldman Sachs, Merrill Lynch, Deutsche Bank, Morgan Stanley, J.P. Morgan, and
21
   Macquarie Capital acted as joint book-running managers and MCS Capital Markets acted as co-manager
22
   for the Offering.
23
        33.    The Registration Statement was negligently prepared and, as a result, contained untrue
24
   statements of material facts or omitted to state the facts necessary to make the statements not
25
   misleading, and was not prepared in accordance with the rules and regulations governing its preparation.
26
   Given Defendants' interest was ensuring a favorably high offering price, it is hardly surprising that the
27
   Company's Registration Statement and Prospectus incorporated therein again presented a highly
28

positive picture of the Company's business, performance, prospects, and products, while omitting crucial realities.

34.     The Registration Statement provided the following regarding what documents were "incorporated by reference" in the Offering:

> The SEC allows us to "incorporate by reference" information into this prospectus supplement, which means that we can disclose important information about us by referring you to another document filed separately with the SEC.  The information incorporated by reference is considered to be a part of this prospectus supplement.  This prospectus supplement incorporates by reference the documents and reports listed below (other than portions of these documents that are either (1) described in paragraph (e) of Item 201 of Registration S-K or paragraphs (d)(1)-(3) and (e)(5) of Item 407 of Regulation S-K promulgated by the SEC or (2) furnished under Item 2.02 or Item 7.01 of a Current Report on Form 8-K (including any exhibits included with such items)):
>
> • our Annual Report on Form 10-K for the fiscal year ended December 31, 2014, filed with the SEC on March 2, 2015, including the information specifically incorporated by reference into our Annual Report on Form 10-K from our Definitive Proxy Statement on Schedule 14A filed with the SEC on April 17, 2015;
>
> • our Quarterly Reports on Form 10-Q for the fiscal quarter ended March 31, 2015 filed with the SEC on May 7, 2015 and for the fiscal quarter ended June 30, 2015 filed with the SEC on August 6, 2015;
>
> • our Current Reports on Form 8-K filed with the SEC on January 20, 2015, January 22, 2015, January 23, 2015, January 27, 2015, February 3, 2015 (excluding Item 7.01 thereof), February 10, 2015, February 13, 2015 (excluding Item 7.01 thereof), March 11, 2015, March 12, 2015, March 12, 2015, April 22, 2015, May 8, 2015, May 12, 2015, May 12, 2015, May 13, 2015, May 21, 2015 (as modified by our Current Report on Form 8-K/A filed with the SEC on May 21, 2015), May 29, 2015, June 29, 2015, June 29, 2015 (as modified by our Current Report on Form 8-K/A filed with the SEC on July 7, 2015), July 21, 2015 and July 22, 2015 (excluding Item 7.01 thereof); and
>
> • the description of the Company's common stock, $.01 par value per share, included in our Current Report on Form 8-K filed with the SEC on September 9, 2013

**A.    False and Misleading Press Releases Incorporated Into the Registration Statement and Prospectus for the Preferred Stock**

35.     Many of the press releases incorporated by reference into the Registration Statement and Prospectus contained false and misleading information.

36.     For instance, on May 29, 2014, the Company announced in a press release that TerraForm Power, Inc. ("TerraForm Power"), a YieldCo subsidiary of SunEdison, had filed a registration statement with the SEC for a proposed Initial Public Offering ("IPO").  The press release stated the following, in pertinent part:

8

> [SunEdison] announced that its yieldco subsidiary, TerraForm Power, Inc. ("TerraForm Power"), has publicly filed a registration statement on Form S-1 with the Securities and Exchange Commission (the "Commission") relating to a proposed initial public offering of Class A common stock.

Press Release, *SunEdison, Inc., SunEdison Announces Filing of Registration Statement for Proposed Initial Offering of TerraForm Power, Inc.* (May 29, 2014).

37.     Then, on July 17, 2014, TerraForm Power began trading on the NASDAQ at $33.85 per share – 33% above its IPO price.  TerraForm Power offered 20.1 million shares and raised about $500 million in its IPO, valuing the company at around $2.4 billion.  SunEdison retained nearly 95% of the voting power in the company.

38.     Throughout the next year, the Company issued quarterly financial statements showing the Company was increasing net sales and was poised for growth.  The Company also continued its acquisition strategy, announcing its acquisition of First Wind Holdings, LLC ("First Wind") for $2.4 billion in a transaction that was completed on January 29, 2015.  To fund these acquisitions, SunEdison raised $190 million through a secondary offering of shares in Singapore-based SunEdison Semiconductor Ltd, secured a $400 million credit commitment from several financial institutions, offered $350 million of convertible senior notes due 2022, and offered $375 million aggregate principal amount of convertible senior notes due 2023 and $375 million aggregate principal amount of convertible senior notes due 2025.

39.     On May 7, 2015, SunEdison announced that a second of its YieldCos, TerraForm Global, Inc. ("TerraForm Global") had filed a registration statement in preparation for its IPO.

**B.     The Company Misleads Investors**

40.     However, the Company continued to take on new debt to fund growth.  On June 16, 2015, SunEdison announced in a press release that it had signed a definitive agreement to acquire 100% of Globeleq Mesoamerica Energy ("GME"), a renewable energy company based in Central America.  In the press release, Ahmad Chatila ("Chatila"), Chief Executive Officer of SunEdison, touted the expansion of SunEdison, encouraging investors to buy into the big lie that the Company was building a plan of sustainable growth.  Chatila stated the following in the press release:

> The acquisition of GME strengthens SunEdison's leadership position in the global wind energy market and significantly expands our presence in Central America, a region that offers growth opportunities for our emerging markets development platform . . . . With this acquisition we not only gain an experienced and talented management team with a proven track record in the region, but also position ourselves to accelerate our performance and deliver attractive returns to our shareholders.

Press Release, SunEdison, Inc., *SunEdison Signs Definitive Agreement To Acquire GME, Central America's Leading Renewable Energy Company, From Actis and Mesoamerica Power* (June 16, 2015).

41.     However, unbeknownst to shareholders, this acquisition surge was funded on a house of cards being propped up by false statements and omissions. Rather than address known needs to increase revenues and lower debt, the Company again jumped into another acquisition.

42.     On July 20, 2015, SunEdison announced in a press release that it had entered into a merger agreement with Vivint Solar, a provider of residential solar systems in the United States, for $2.2 billion in cash, stock, and convertible notes. Chatila stated the following in the press release:

> SunEdison's acquisition of Vivint Solar is a logical next step in the transformation of our platform after the successful execution of our First Wind acquisition in January 2015.
>
> We expect the Vivint Solar transaction to create significant value for our stockholders through the accretion in our TerraForm Power ownership, the acceleration of our Incentive Distribution Rights and an immediate expansion of our capacity and bandwidth to grow our residential business in the U.S. and globally. As of the fourth quarter of 2015, our organic growth and recent acquisitions will put SunEdison on track to deploy more than 1 gigawatt per quarter.

Press Release, SundEdison, Inc., *SunEdison and TerraForm Power Announce Definitive Agreement To Acquire Vivint Solar for $2.2 Billion* (July 20, 2015).

43.     On the same day, during a conference call, Chatila stated that "[w]ith Vivint Solar, we're tripling our value."

44.     Also on July 20, 2015, a *Forbes* article entitled *SunEdison Buys Vivint to Overcome Weakness In Residential Solar* stated that purchasing Vivint "will turn SunEdison into a formidable player in the residential market, the one segment in which it hasn't been a key player."

45.     However, unbeknownst to investors, and despite Chatila's assurances, SunEdison's acquisition plan was not sustainable. Rather than pulling back, the Company again charged ahead.

46.     On July 31, 2015, TerraForm Global launched its IPO.  Originally, TerraForm Global intended to offer 56.6 million shares for between $19 and $21 each to raise a total of $1 billion. However, SunEdison was ultimately only able to raise $675 million, selling only 45 million shares at a price of $15 per share.  Following the disappointing IPO, SunEdison's prices began to fall.

47.     Still, SunEdison continued to mislead investors into believing that the Company was on the right path.  On August 6, 2015, SunEdison issued a press release announcing its financial results for the 2015 second quarter, reporting a loss of $263 million on $455 million of revenue.  It had a net loss of $0.93 per share compared to estimates of a net loss of $0.55 per share.  According to its financials, SunEdison's debt now stood at $11 billion, which included debt from several recent multibillion dollar deals to acquire new wind and solar assets.  Once again in the face of increasing debt, Chatila stated the following regarding its growth:

> During the second quarter, we continued to balance operational execution while meeting our strategic objectives.  On the operations front, our leading organic development engine continues to execute as we exceeded our megawatt (MW) and Retained Cash Available for Distribution (CAFD) guidance, delivering 404 MW and $63 million, respectively.
>
> In addition, TerraForm Power delivered $65 million of CAFD and continues to create value for shareholders with its leading DPS growth.  Finally, we have largely completed our platform transformation with the agreement to acquire Vivint Solar, a leader in residential solar, as well as the IPO of our Emerging Markets-focused asset ownership platform, TerraForm Global."

Press Release, SunEdison, Inc., *SunEdison Reports Second Quarter 2015 Results* (Aug. 6, 2015).

### C.     False Statements About the Company's Internal Controls

48.     Also incorporated by reference into the Registration Statement and Prospectus were the Company's 10-K and 10-Q filings with the SEC from 2014 and 2015, in which SunEdison made false and misleading representations about the Company's internal controls.

49.     Specifically, in these documents, Chatila and Brian Wuebbels ("Wuebbels"), Executive Vice President and Chief Financial Officer of SunEdison, both represented the following:

> 1.     I have reviewed this annual report on Form 10-K of SunEdison, Inc.;
>
> 2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

11

3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.     The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision; to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b)     Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c)     Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d)     Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting.

5.     The registrant's other certifying officers and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's independent registered public accounting firm and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)     All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)     Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

## II.    THE MATERIAL, UNDISCLOSED FACTS THAT INVESTORS WERE ENTITLED TO KNOW

50.     Unbeknownst to investors or the members of the Class, however, at the time of the Offering, Defendants failed to disclose that the Company was experiencing a serious liquidity crisis, was

12

1   significantly over-leveraged and borrowing cash to remain in business at an unsustainable rate, and was

2   experiencing a significant breakdown in the Company's internal financial controls.

3   **III.    THE TRUTH BEGINS TO EMERGE**

4       51.     Unfortunately for investors, however, it was not until October 5, 2015, when SunEdison

5   filed an 8-K with the SEC announcing layoffs of 15% of its workforce and restructuring charges of $30

6   to $40 million for Q3 2015 through Q1 2016, that investors first began to learn the truth about the

7   Company's precarious financial and liquidity position.

8       52.     The next day, on October 6, 2015, the *Wall Street Journal* reported in an article entitled

9   *SunEdison Won't Complete $700 Million Buyout of Latin America Power* that as its "woes mount[ed],"

10  SunEdison failed to make a required $400 million upfront payment for a roughly $700 million planned

11  acquisition of Latin America Power ("LAP").  The article reported that attorneys for LAP stated that

12  SunEdison was in breach of its obligations under the deal.

13      53.     Then, on October 7, 2015, SunEdison lowered its 2016 projections and announced in a

14  press release that it would not sell any projects to TerraForm Power or TerraForm Global that year.

15  Chatila announced on a call with analysts that SunEdison would "pivot to third-party sales" because

16  there was "a disconnect between the value of these underlying assets and what people are willing to pay

17  for them in a yieldco."  Even worse, Chatila announced that SunEdison planned to reduce expansion

18  plans in Latin America and other emerging markets, which were the YieldCo's geographic focus.

19  Chatila explained that SunEdison "de-emphasized countries, consolidated divisions and walked away

20  from things that didn't make sense in the current dislocation in the market."  In other words, the project

21  acquisition strategy upon which the YieldCos depended to effectuate its business plan would not be

22  carried out.

23      54.     On October 8, 2015, *SeekingAlpha* issued report entitled *SunEdison: Is Bankruptcy*

24  *Possible*? noting that SunEdison's cash expenditures are "clearly unsustainable" with the Company

25  burning "around $3.5 billion in the last four quarters."  The article also noted that "SunEdison is over-

26  leveraged" with "shareholders equity of only $632 million and total liabilities of $16,925 million, it is

27  possible to calculate a debt to equity ratio of 26.78."

28

13

CLASS ACTION COMPLAINT

55.     On February 29, 2016, investors learned more bad news when SunEdison delayed its 10-K filing due to allegations made by former executives on the accuracy of the company's financial position.  An audit committee of SunEdison's board, in consultation with outside advisors and counsel, opened an investigation which it warned could cause a reassessment of the company's liquidity and its overall financial standing.

56.     On March 2, 2016, SunEdison further shocked investors when it announced in a press release that it was suspending payment of the quarterly dividends on the Preferred Stock.

57.     Then, on March 16, 2016, the Company announced in a press release that it had further postponed the filing of its 10-K "due to the identification by management of material weaknesses in its internal controls over financial reporting," which were causing management to follow "additional procedures" to complete its 2015 financial statements.

58.     On March 22, 2016, *Reuters* reported that the Company had entered into debtor-in-possession negotiations, a sign that the Company was preparing for a bankruptcy filing.

59.     On March 31, 2016, the Company disclosed it had received a subpoena from the U.S. Department of Justice for information on its failed attempt to buy Vivint Solar and confirmed it received a "nonpublic, informal" inquiry from the SEC.  The Company's 8-K filing with the SEC stated the following:

> On March 28, 2016, SunEdison, Inc. (the "Company") received a subpoena from the U.S. Department of Justice (the "DOJ") seeking information and documentation relating to: (i) certain financing activities in connection with the Company's acquisition of Vivint Solar, Inc., (ii) the conduct of a former non-executive employee who is alleged to have committed wrongdoing in connection with the Vivint termination negotiations, (iii) the previously disclosed investigations by the Company's audit committee, (iv) intercompany transactions involving the Company and each of TerraForm Power Inc. and TerraForm Global Inc. and (v) the financing of the Company's Uruguay projects in connection with project costs and equity contributions that remain to be contributed by the Company and the DOJ may have additional requests.  Also, the Company has received a nonpublic, informal inquiry from Securities and Exchange Commission (the "SEC") covering similar areas.  The Company and the board of directors intend to cooperate with the DOJ's inquiry and the SEC investigation.

60.     On this news, shares of SunEdison preferred stock fell from $37.44 per share on March 30, 2016 to $30 per share on March 31, 2016, for over 19%.

61.     In response to those disclosures, the Company's shares fell sharply, falling from the $1000 issuing price to a closing price on April 1, 2016, of $20; a staggering drop of 98%.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this action as a class action on behalf of a Class, consisting of all those who purchased the Company's preferred stock pursuant or traceable to the Company's Offering and Registration Statement and who were damaged thereby (the "Class"). Excluded from the Class are Defendants; the officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

63.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members of the proposed Class. The members of the proposed Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

64.     Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

65.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

66.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

      a.      whether the federal securities laws were violated by Defendants' acts as alleged herein;

      b.      whether the Prospectus and Registration Statement contained materially false and misleading statements and omissions; and

      c.      to what extent Plaintiffs and members of the Class have sustained damages and the proper measure of damages.

67.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**FIRST CLAIM**
**Violations of §11 of the Securities Act**
**Against All Defendants**

68.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

69.     This Claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against each of the Defendants.

70.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

71.     Defendants each served as underwriters in connection with the Offering.  Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement.  They had a duty to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading and that the documents contained all facts required to be stated therein.  In the exercise of reasonable care, Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material facts necessary to make the statements made therein not misleading.  As such, Defendants are liable to Plaintiffs and the Class.

72.     By reasons of the conduct herein alleged, each Defendant violated §11 of the Securities Act.

73.     Plaintiffs acquired the Company's common stock pursuant or traceable to the Registration Statement, and without knowledge of the untruths and/or omissions alleged herein.

16

1  Plaintiffs sustained damages, and the price of the Company's common stock declined substantially due

2  to material misstatements in the Registration Statement.

3       74.    This claim was brought within one year after the discovery of the untrue statements and

4  omissions and within three years of the date of the Offering.

5       75.    By virtue of the foregoing, Plaintiffs and the other members of the Class are entitled to

6  damages under §11 as measured by the provisions of §11(e), from the Defendants and each of them,

7  jointly and severally.

8                          **SECOND CLAIM**
                 **Violations of §12(a)(2) of the Securities Act**
9                          **Against All Defendants**

10      76.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set

11 forth herein.

12      77.    Defendants were sellers, offerors, and/or solicitors of purchasers of the Company's

13 securities offered pursuant to the Offering.  Defendants issued or caused to be issued, the Registration

14 Statement in connection with the Offering.  The Registration Statement was used to induce investors,

15 such as Plaintiffs and the other members of the Class, to purchase the Company's shares.

16      78.    The Registration Statement contained untrue statements of material facts, omitted to state

17 other facts necessary to make the statements made not misleading, and omitted material facts required to

18 be stated therein.  Defendants' acts of solicitation included participating in the preparation of the false

19 and misleading Registration Statement.

20      79.    As set forth more specifically above, the Registration Statement contained untrue

21 statements of material facts and omitted to state material facts necessary in order to make the statements,

22 in light of circumstances in which they were made, not misleading.

23      80.    Plaintiffs and the other Class members did not know, nor could they have known, of the

24 untruths or omissions contained in the Registration Statement.

25      81.    Defendants were obligated to make a reasonable and diligent investigation of the

26 statements contained in the Registration Statement to ensure that such statements were true and that

27 there was no omission of material fact required to be stated in order to make the statements contained

28
                                    17

therein not misleading.   None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects.  Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

82.   This claim was brought within one year after discovery of the untrue statements and omissions in the Registration Statement and within three years after the Company's shares were sold to the Class in connection with the Offering.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.   Declaring this action to be a proper class action and certifying Plaintiffs as Class representatives;

B.   Awarding Plaintiffs and the other members of the Class compensatory damages;

C.   Awarding Plaintiffs and the other members of the Class rescission on their §12(a)(2) claims;

D.   Awarding Plaintiffs and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.   Awarding Plaintiffs and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED: August 11, 2016                    SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

JOHN T. JASNOCH (CA BAR NO. 281605)
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565

18

CLASS ACTION COMPLAINT

Facsimile: (619) 233-0508
jjasnoch@scott-scott.com

Thomas L. Laughlin
Joseph V. Halloran (CA BAR NO. 288617)
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
tlaughlin@scott-scott.com
jhalloran@scott-scott.com

Geoffrey M. Johnson
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
12434 Cedar Road, Suite 12
Cleveland Heights, OH 44106
Telephone: (216) 229-6088
Fax: (216) 229-6092
Email: gjohnson@scott-scott.com

*Attorneys for Plaintiffs Charles Bloom and Sharon
Burnstein*

CLASS ACTION COMPLAINT

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Goldman, Sachs & Co. (Additional Parties Listed on the Attachment Page)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Charles Bloom and Sharon Burnstein, Individually and on Behalf of All Others Similarly Situated



*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SAN MATEO COUNTY

AUG 1 1 2016

Clerk of the Superior Court
By _____
DEPUTY CLERK

File By Fax

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Superior Court of California, County of San Mateo Southern Branch<br>400 County Center, Redwood City, CA 94063 | **CASE NUMBER:**<br>*(Número del Caso):*<br><br>**16CIV00884** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

John T. Jasnoch, 707 Broadway, Suite 1000, San Diego, CA 92101, 619-233-4565

| DATE:<br>*(Fecha)* | AUG 1 1 2016 | Clerk, by<br>*(Secretario)* | RODINA M. CATALANO | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

16 – CIV – 00884
SUM
Summons Issued / Filed
146756

[SEAL]

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 (Rev. July 1, 2009) | **SUMMONS** | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Bloom v. Goldman, Sachs & Co. | 16CIV00884 |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

MERRILL LYNCH, PIERCE, FENNER & SMITH INC., DEUTSCHE BANK SECURITIES INC., MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, MACQUARIE CAPITAL (USA) INC., and MCS CAPITAL MARKETS LLC

Page  2  of  2

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

—John T. Jasnoch (CA 281605)
Scott+Scott, Attorneys at Law, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
TELEPHONE NO.: 619-233-4565     FAX NO.: 619-233-0508
ATTORNEY FOR *(Name):* Plaintiffs Charles Bloom and Sharon Burnstein

**FILED**
**SAN MATEO COUNTY**

AUG 1 1 2016

Clerk of the Superior Court
By_____
DEPUTY CLERK

File By Fax

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City 94063
BRANCH NAME: Southern Branch

CASE NAME:
Bloom v. Goldman, Sachs & Co.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 16CIV00884 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder | JUDGE: |
| | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[✓] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties     d. [✓] Large number of witnesses
   b. [✓] Extensive motion practice raising difficult or novel     e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve     in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence     f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary     b. [ ] nonmonetary; declaratory or injunctive relief     c. [ ] punitive
4. Number of causes of action *(specify):* Three; Violations of Sections 11, 12, and 15 of the Securities Act of 1933
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 8/11/2016
John T. Jasnoch
_____
(TYPE OR PRINT NAME)     ► _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov



| Attorney or Party without Attorney (Name/Address) | FOR COURT USE ONLY |
|---|---|
| John T. Jasnoch (CA 281605)<br>Scott+Scott, Attorneys at Law, LLP<br>707 Broadway, Suite 1000, San Diego, CA 92101<br>Telephone: 619-233-4565<br>State Bar No.:  CA 281605<br>Attorney for:   Plaintiffs Charles Bloom & Sharon Burnstein | **FILED**<br>**SAN MATEO COUNTY**<br><br>AUG 1 1 2016<br><br>Clerk of the Superior Court<br>By _____<br>DEPUTY CLERK |
| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN MATEO<br>400 COUNTY CENTER<br>REDWOOD CITY, CA  94063 | |
| Plaintiff<br>Charles Bloom & Sharon Burnstein | |
| Defendant<br>Goldman, Sachs & Co., et al. | |
| **Certificate Re Complex Case Designation** | Case Number<br>16CIV00884 |

File By Fax



16 - CIV – 00884
CCID
Certificate Re: Complex Case Designation
146702

## This certificate must be completed and filed with your Civil Case Cover Sheet if you have checked a Complex Case designation or Counter-Designation

1.   In the attached Civil Case Cover Sheet, this case is being designated or counter-designated as a complex case [or as not a complex case] because at least one or more of the following boxes has been checked:

☑ Box 1 – Case type that is best described as being [or not being] provisionally complex civil litigation (i.e., antitrust or trade regulation claims, construction defect claims involving many parties or structures, securities claims or investment losses involving many parties, environmental or toxic tort claims involving many parties, claims involving mass torts, or insurance coverage claims arising out of any of the foregoing claims).

☑ Box 2 – Complex [or not complex] due to factors requiring exceptional judicial management

☑ Box 5 – Is [or is not] a class action suit.

2.   This case is being so designated based upon the following supporting information [including, without limitation, a brief description of the following factors as they pertain to this particular case: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions

pending in one or more courts in other counties, states or countries or in a federal court;
(6) whether or not certification of a putative class action will in fact be pursued; and (7)
substantial post-judgment judicial supervision]:

1, 4, and 6.  This is a securities class action under the Securities Act of 1933

that seven underwriters with using false and misleading statements on their

August 19, 2015 Offering of preferred stock.  The Defendants will obtain

separate counsel, there will be a large number of witnesses and a substantial

amount of documentary evidence, and Plaintiffs will seek class certification.

*(attach additional pages if necessary)*

3.      Based on the above-stated supporting information, there is a reasonable basis for the complex
case designation or counter-designation [or noncomplex case counter-designation] being made
in the attached Civil Case Cover Sheet.

\*\*\*\*\*

I, the undersigned counsel or self-represented party, hereby certify that the above is true and correct
and that I make this certification subject to the applicable provisions of California Code of Civil
Procedure, Section 128.7 and/or California Rules of Professional Conduct, Rule 5-200 (B) and San
Mateo County Superior Court Local Rules, Local Rule 2.30.

Dated:  **8/11/2016**

**John T. Jasnoch**
[Type or Print Name]

[Signature of Party or Attorney For Party]

CV-59 [Rev. 1/06]                                                                                    www.sanmateocourt.org

## NOTICE OF CASE MANAGEMENT CONFERENCE

Charles Bloom, et al

Case No: **16CIV00884**

vs.

Goldman, sachs + Co, et al

Date: 12/9/16

Time 9:00 a.m.

16 - CIV - 00884
NCMC
Notice of Case Management Conference
146757

**FILED**
SAN MATEO COUNTY
AUG 1 1 2016
Clerk of the Superior Court
By_____
DEPUTY CLERK

Dept. _____   --on Tuesday & Thursday
Dept. 21   --on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of the Court and local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

   a) Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).

   b) Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

   c) File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.

   d) Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30-days before the date set for the Case Management Conference.

2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3. Continuances of Case Management Conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation to ADR and Proposed Order (see attached form). If plaintiff files a Stipulation to ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10–days prior to the first scheduled Case Management Conference, the Case Management Conference will be continued for 90-days to allow parties time to complete their ADR session. The court will notify parties of their new Case Management Conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off Case Management Conference Calendar. If "Does", "Roes," etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management judge will issue orders at the conclusion of the conference that may include:

   a) Referring parties to voluntary ADR and setting an ADR completion date;

   b) Dismissing or severing claims or parties;

   c) Setting a trial date.

8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court's website at: www.sanmateocourt.org

*Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall information).